OSCAR GRUSS & SON, Plaintiff,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant and Third-Party Plaintiff,

v.

Isidor BUCHMANN, Third-Party Defendant.

No. 65 Civ. 33.

United States District Court
S. D. New York.

Nov. 16, 1966.

---

280

Guggenheimer & Untermyer, New York City, for plaintiff; Alfred Berman, Joel H. Kagan, New York City, of counsel.

Joseph T. Keller, New York City, for defendant.

## OPINION

WEINFELD, District Judge.

The defendant moves pursuant to Rules 26 and 28 of the Federal Rules of Civil Procedure for the issuance of Letters Rogatory to take the depositions of Isidor Buchmann, Willy Kohler and Alex Bloechliger, residents of the Conferation of Switzerland. The parties are in accord that under the laws of Switzer-

land oral depositions of its residents are not allowed; that depositions may be taken only on written interrogatories under Letters Rogatory forwarded to the appropriate Swiss court through diplomatic channels.[1]

The plaintiff opposes the application upon the ground that the nature of its claim and the defenses interposed thereto require oral examination of the witnesses; that to limit the examination to written interrogatories would deprive plaintiff of a meaningful cross-examination of hostile witnesses and of a fundamentally fair trial.

The plaintiff seeks a substantial recovery of damages under a Brokers Blanket Bond issued by the defendant, which insured plaintiff against any dishonest, fraudulent or criminal conduct of its employees, whether committed alone or in collusion with others. The plaintiff is a member of the New York Stock Exchange, and from 1955 to 1962 had a branch office in Switzerland. This office was conducted as a wholly owned subsidiary under the name of Valoren & Handels A. G. (Valoren). In 1962 Valoren was rendered insolvent, plaintiff claims, by reason of fraudulent and criminal conduct of two of its former employees. This involved, among other matters, the conversion of securities belonging to customers and the making of false entries upon its books of account. The depositions sought to be taken under the proposed Letters Rogatory are of those former employees, Isidor Buchmann who was the office manager of Valoren, Willy Kohler, his principal assistant, and of Alex Bloechliger, a certified public accountant, who plaintiff charges collaborated and conspired with the employees in concealing their criminal conduct over a period of years.

1. United States v. Paraffin Wax, 2255 Bags, 23 F.R.D. 289 (E.D.N.Y.1959); In re Bedford Watch Co., 18 F.Supp. 1009 (S.D.N.Y.1937). See also, United States v. Watchmakers of Switzerland Informa- tion Center, Inc., 3 Fed.Rules Serv.2d 28b.21, Case 1 (S.D.N.Y.1960); Jones, International Judicial Assistance, 62 Yale L.J. 515, 519–20 (1953)

Plaintiff asserts that in 1962, when Valoren became financially embarrassed, Buchmann made a written confession, a copy of which is attached to its opposing papers. Plaintiff initiated criminal charges in Switzerland against Buchmann and Bloechliger, Kohler being implicated as a confederate. These proceedings are still pending despite Buchmann's written confession. He and his confederates have raised the defense under Swiss law that the criminal acts were committed with the knowledge and participation of one of plaintiff's partners.

The defendant insurance company resists payment under the bond in large part upon the employees' aforesaid defense to the criminal charges; in substance, that the bond did not cover any loss resulting from dishonest, fraudulent or criminal acts of any partner of the assured, and further that the bond was to terminate upon discovery by the assured of any dishonest or fraudulent act on the part of any employee covered thereunder. The defendant intends to offer the testimony of the three proposed deponents in support of its defenses.

It is not challenged that representatives of the defendant, including its attorney in this action and a special claim examiner, have made several trips to Switzerland where, with local counsel, accountants and investigators, they have, over extended periods, conferred and worked closely with the proposed deponents. The defendant's records of the conferences and interviews with the three alleged malefactors leave no doubt that they have cooperated and continue to cooperate with the defendant's representatives. Indeed, the defendant does not allege that it requires the depositions here sought for discovery purposes.

It can hardly be gainsaid that the interest of the proposed deponents in resisting the criminal charges and the interest of the defendant in resisting plaintiff's claim for judgment under the bond run parallel courses and are closely allied. Thus, apart from their hostility toward plaintiff, engendered by its initiation of criminal charges against them, the three proposed deponents, in answering written interrogatories, would be under a strong motive to exculpate themselves, which by the same token would serve to sustain the insurer's defense to this civil suit. Their cooperation with defendant's representatives suggests they would be complaisant witnesses. It would not be difficult to frame direct interrogatories to bring forth anticipated responses. The difficulty of formulating in advance appropriate cross-interrogatories to meet this situation is apparent.

The factual inquiry is necessarily complex in view of the many transactions involved and the methods employed to cover up the derelictions. In its efforts to repel the witnesses' charges that one of the plaintiffs was involved and participated in the alleged criminal conduct, plaintiff seeks to confront and question them with impeaching proof. There are hundreds of documents and numerous transactions as to which they are to be questioned. In addition, Bloechliger, the accountant in Switzerland, submitted to plaintiff's certified accountants here in New York financial reports containing periodic audits of accounts of Valoren. There were eighteen reports over a six-year period. Plaintiff's accountants here charge that Bloechliger's certifications were false and distorted in a number of respects directly related to the embezzlement of the securities and other claimed criminal acts of plaintiff's employees.

 Only the most searching inquiry with respect to these matters would unearth and expose the details of the claimed manipulation of books and records and Bloechliger's collaboration

with the employees.[2] In the light of the deponents' hostility and self-interest, the inadequacy of cross-interrogatories as a means of appropriate cross-examination is manifest. It would be devastatingly prejudicial to plaintiff to issue Letters Rogatory to secure the testimony of these hostile witnesses without the opportunity of confrontation and a face-to-face cross-examination. Whether plaintiff or defendant is to prevail turns in very substantial measure upon the credibility of the alleged culprits. In such circumstance, the plaintiff, particularly since it has the burden of persuasion, should "not be deprived of the invaluable privilege of cross-examing the [witnesses] * * * —the 'crucial test of credibility'—in the presence of the jury. * * * [T]he demeanor of witnesses is recognized as a highly useful, even if not an infallible, method of ascertaining the truth and accuracy of their narratives." [3] The opportunity for evasive answers or self-serving exculpatory statements by the witnesses emphasizes the need for oral cross-examination to enable plaintiff to expose the claimed true facts. What this court said in a somewhat related situation has pertinence here:

"Under ordinary circumstances the advantages of oral examination over the rigidity of written interrogatories are readily acknowledged. Cross-examination of a witness who may be evasive, recalcitrant or nonresponsive to questions is an essential in ferret-ing out facts, particularly of an adverse party or witness.

"In this case there is greater need than in the ordinary one for a face-to-face questioning of the plaintiff and its officers. The issues concern technical and complex problems * * *.

"To suggest that appropriate and searching questions can be framed and answers relied on to furnish the defendant the information to which it is entitled is to underestimate the nature of the issues and the problems of proof involved herein. An oral examination is clearly indicated. To deny it would result in serious prejudice to the defendant. * * * " [4]

The defendant does not take issue that plaintiff faces a substantial disadvantage in attempting to cross-examine the witnesses by interrogatories, but urges that since plaintiff conducted its business in Switzerland through its subsidiary it must accept the shortcomings of Swiss laws and procedures. Undoubtedly this would be so if the suit were pending in the Swiss courts, but the action is in our courts and involves our nationals. Moreover, since the defendant has secured the cooperation of the three witnesses, it is not unlikely that their testimony can be had in open court upon a trial here or their depositions taken upon a consensual arrangement in a country where oral inquiry is permitted.[5] Upon the argument of the motion the plaintiff stipulated that if the wit-

2. Cf. Otis McAllister & Co. v. The S.S. Marchovelette, 200 F.Supp. 695, 696 (S.D.N.Y.1961); Branyan v. Koninklijke Luchtvaart Maatschappij, 13 F.R.D. 425, 427 (S.D.N.Y.1953); Lago Oil & Transport Co. v. United States, 97 F.Supp. 438, 439 (S.D.N.Y.1951).

3. Arnstein v. Porter, 154 F.2d 464, 469–470 (2d Cir. 1946). Cf. Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 628, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

4. V.O. Machinoimport v. Clark Equip. Co., 11 F.R.D. 55, 58 (S.D.N.Y.1951). See also, Otis McAllister & Co. v. The S.S. Marchovelette, 200 F.Supp. 695, 696 (S.D.N.Y.1961); Vareltzis v. Luckenbach S.S. Co., 20 F.R.D. 383, 384 (S.D.N.Y.1956); Branyan v. Koninklijke Luchtvaart Maatschappij, 13 F.R.D. 425, 427 (S.D.N.Y.1953); Lago Oil & Transport Co. v. United States, 97 F.Supp. 438, 439 (S.D.N.Y.1951); Groll v. Stolkin, 12 F.R.D. 262 (S.D.N.Y.1951).

5. Cf. V.O. Machinoimport v. Clark Equip. Co., 11 F.R.D. 55, 60 (S.D.N.Y.1951).

nesses appeared here to testify, plaintiff would take no action against them.

The court is persuaded that the evidential value of the testimony of the proposed witnesses upon written interrogatories would be so far outweighed by the likely prejudice to the plaintiff's right to a full, meaningful and searching cross-examination and to a fair trial[6] as to require denial of the motion for the issuance of Letters Rogatory.

The motion is denied. This is an order.

6. Cf. Willner v. Committee on Character and Fitness, 373 U.S. 96, 103–104, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).