DBMS CONSULTANTS
LIMITED, Plaintiff,

v.

COMPUTER ASSOCIATES INTERNA-
TIONAL, INC. and Uccel
Corporation, Defendants.

Civ. A. No. 87–2244–N.

United States District Court,
D. Massachusetts.

July 17, 1990.

Joan A. Lukey, Hale and Dorr, Boston, Mass., for plaintiff.

Philip J. Ryan, Gary E. Martinelli, Springfield, Mass., for defendants.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This is a breach of contract action[1] over which, it is asserted, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiff DBMS Consultants Limited ("DBMS") has applied for the issuance of a letter rogatory requesting the assistance of the Supreme Court of the State of New South Wales, Australia in compelling the deposition of a witness. The defendants oppose the application. For the reasons set forth below, the Court allows DBMS's application to the extent that the Court will issue a letter rogatory requesting the Australian court's assistance in deposing the witness on written questions as provided under Fed.R.Civ.P. 31.

### I. *Background*

In March, 1986, DBMS and defendant Computer Associates International, Inc. ("CA") entered into a written agreement that DBMS would be the exclusive distributor of CA computer software products in the Far East° ("distribution agreement"). The distribution agreement apparently provided, at the time that it was executed, that DBMS would pay fixed marketing fees to CA on a monthly basis. DBMS contends that this marketing fee provision was subsequently modified in the spring of 1987 by agreement with DBMS and at the direction of David Wardle, President of CA's Far Eastern Division. According to DBMS, the modified agreement provided that DBMS would pay marketing fees to CA only as invoiced by CA against DBMS's actual sales of CA products. CA maintains that the distribution agreement was never modified.

In June, 1987, CA notified DBMS that the distribution agreement would be terminated as of March 31, 1988. CA posits that it was entitled to so terminate the distribution agreement because DBMS did not make fixed, monthly marketing fee payments and therefore was in default under the agreement. DBMS's position seems to be that these fixed fee payments were not required under the modified distribution agreement and therefore that DBMS was not in default, making CA's act of termination an actionable breach of the modified agreement.

Apparently, three invoices were generated by CA and issued to DBMS for the months of April, May and June, 1987. DBMS urges that these documents show that CA departed from a fixed marketing fee regime and was invoicing DBMS against actual sales of CA products. In other words, DBMS suggests that these invoices indicate that the distribution agreement was modified as summarized above.

DBMS represents that it has learned through discovery that the three invoices were prepared by Paul Butler, a CA employee in 1987 and until 1988 or 1989. Citing to Wardle's deposition testimony, DBMS claims that Wardle generally authorized Butler to prepare the invoices, cannot recall specifically what he told Butler, but denies that the distribution agreement was modified as DBMS asserts. DBMS claims that Butler is the only witness who has knowledge of Wardle's specific instructions *vis.* the invoices.

In short, DBMS believes that Butler's testimony is essential to proving DBMS's claim that, contrary to Wardle's testimony, the marketing fees provision of the distribution agreement was modified at Wardle's direction. Butler currently resides in Australia, and is not under the control of any of the parties to this litigation. According-

---

1. The Court earlier allowed defendants' motion to dismiss Count I of the plaintiff's complaint, which alleged violations of the Sherman Act.

ly, DBMS wishes to depose Butler in Australia. DBMS proposes to arrange this deposition through a letter rogatory issued by this Court requesting the assistance of the Supreme Court of the State of New South Wales, Australia in compelling Butler's appearance.

In its opposition to DBMS's application, CA argues that 1) Butler's testimony is not relevant to DBMS's claim; 2) DBMS has not established a proper foundation for examining Butler; 3) Butler's testimony is inadmissable as evidence and is not reasonably calculated to lead to the discovery of admissable evidence; 4) DBMS's requested discovery falls outside the scope of the Court's most recent discovery order; and 5) the expense of preparing for and attending Butler's deposition in Australia would be overly burdensome for CA. CA moves, in the alternative, that the Court should order DBMS to bear CA's expenses in connection with the Butler deposition in the event that the letter rogatory is issued.

## II. *Application For Letter Rogatory*

■ It is settled that the courts have inherent authority to issue letters rogatory. *United States v. Reagan*, 453 F.2d 165, 172 (6th Cir.1971), *cert. denied*, 406 U.S. 946, 92 S.Ct. 2049, 32 L.Ed.2d 334 (1972); *United States v. Staples*, 256 F.2d 290, 292 (9th Cir.1958). In effect, DBMS asks the United States, through this Court, to request Australia's cooperation in obtaining discovery:

> A letter rogatory is defined as the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country; such request being made, and being usually granted, by reason of the comity existing between nations in ordinary peaceful times.

*The Signe*, 37 F.Supp. 819, 820 (E.D.La. 1941). The United States Code recognizes this traditional formulation and provides that a letter rogatory may be transmitted directly by a United States court to the "foreign tribunal ... to whom it is addressed." 28 U.S.C. § 1781(b)(2).

■ Rule 28(b)(3) of the Federal Rules of Civil Procedure provides that a deposition may be taken in a foreign country pursuant to a letter rogatory "issued on application and notice and on terms that are just and appropriate." On an application for the issuance of a letter rogatory seeking a deposition in a foreign country, the Court will not ordinarily weigh the evidence to be elicited by deposition and will not determine whether the witness will be able to give the anticipated testimony. *B & L Drilling Electronics v. Totco*, 87 F.R.D. 543, 545 (W.D.Okla.1978) (citing 26A C.J.S. Depositions § 28, at 318 (1956)). Courts and commentators take the position that some good reason must be shown by the opposing party for a court to deny an application for a letter rogatory. *Eg., Zassenhaus v. Evening Star Newspaper Co.*, 404 F.2d 1361, 1364 (D.C.Cir.1968); Wright & Miller, 8 Federal Practice And Procedure § 2083, text and noted cases at n. 22 (1990 Supp.). Whether such a showing has been made and whether and in what form a letter rogatory should issue are factual determinations turning upon the circumstances of the particular case. *B & L Drilling*, 87 F.R.D. at 545 (citing 26A C.J.S. Depositions, *supra*).

■ The Court finds that the record does not support CA's argument that the discovery sought by DBMS by way of a letter rogatory should be denied as irrelevant to and inadmissable in this action. Under the liberal discovery provisions of the Federal Rules, parties may inquire through deposition as to matters whose admissability is not immediately apparent, as long as the inquiry is reasonably calculated to lead to the discovery of admissable evidence. Fed. R.Civ.P. 26(a), 26(b)(1). Here, the issue whether the distribution agreement was modified as DBMS claims is significant to the resolution of this litigation. According to DBMS, Butler has personal knowledge concerning the genesis of documents that may shed light on this issue. Thus, CA has not shown that a discovery deposition of

Butler ranges so far afield as to exceed the scope of the Federal Rules.

Further, the Court is unpersuaded by CA's argument that DBMS's requested discovery falls outside the scope of the Court's most recent discovery order in this case. On March 29, 1990, the Court issued an order pursuant to Rule 16(b) allowing further "clean-up" discovery. Discovery is ongoing. No trial date has been set. DBMS expects that Butler can respond to questions relating to issues already raised in this litigation. CA admits that the "clean-up" order contemplates that DBMS would have an opportunity to examine documents in Australia. DBMS's proposed discovery event is a deposition, not a document production, but this distinction is unimportant in view of the fact that either Australian discovery initiative presents similar logistical constraints. DBMS's discovery request is not so unrelated to the areas of inquiry contemplated by the "clean-up" order that it should prejudicially surprise CA.

Accordingly, but for the issue of expense and burdensomeness, the Court is inclined to allow DBMS's application. The expense in money and time of deposing Butler in Australia, however, falls heavily on all litigants, notwithstanding DBMS's counsel's serendipitous Australian holiday plans. The Court may only issue letters rogatory "on terms that are just and appropriate." Fed.R.Civ.P. 28(b)(3). In this case, the Court finds that it would be unjust and inappropriate to request a full-blown oral examination, with the attendant time, travel and money constraints for all involved, when a simpler procedure may yield the desired information.

Before bringing substantial resources of the litigants and the courts of two countries to bear on oral depositions in Australia, therefore, the Court rules that DBMS should first attempt to obtain the information it seeks from Butler by taking Butler's deposition on written questions as provided for under Fed.R.Civ.P. 31. Should this less expensive and less burdensome deposition method prove inadequate, the Court will consider any further request to take But-ler's oral deposition in Australia. *Accord B & L Drilling,* 87 F.R.D. at 545–46.

In taking Butler's deposition pursuant to Rule 31, the parties shall bear their own expenses. The only authority cited by CA for the proposition that DBMS should pay CA's expenses in connection with the Butler deposition is *Leasco Data Processing Equipment Corp. v. Maxwell,* 63 F.R.D. 94 (S.D.N.Y.1973). The *Leasco* court ordered the applying party to pay travel expenses and reasonable counsel fees of opposing counsel in connection with a deposition in England requested through a letter rogatory. The *Leasco* opinion, however, clearly indicates that this order was made solely pursuant to a local rule of that court. *Id.* at 97. No reason is proffered as to why that local rule should be persuasive authority here.

## III. *Conclusion*

Therefore, the Court enters the following order:

A. DBMS's application for the issuance of a letter rogatory is allowed to the extent that the court will issue a letter rogatory requesting the assistance of the Supreme Court of the State of New South Wales, Australia in conducting the deposition of Paul Butler on written questions consistent with the provisions of Rule 31 of the Federal Rules of Civil Procedure;

B. The parties shall attempt in good faith to collaborate in the preparation of an appropriate letter rogatory consistent with this Order and shall submit the same to the Court within ten days of this date. The parties shall each present such a submission separately, within ten days of this date, in the event that they are not able to so collaborate.

SO ORDERED.